IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| JAMIE ROURK,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | CIVIL ACTION FILE NO.:<br>4-12-cv-42 (CDL) |

## COMPLAINT

COMES NOW the Plaintiff, Jamie Rourk, and shows the Court the following:

### JURISDICTION AND VENUE

1.

The Plaintiff is a resident of Columbus, Georgia.

2.

Bank of America, N.A. (BANA) is a Delaware corporation doing business in Columbus, Muscogee County, Georgia with its registered agent for service of process being CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

3.

Jurisdiction is proper under 28 USC § 1332 in that there is diversity of citizenship.

4.

Jurisdiction is also proper under 28 USC § 1331 in that one of the counts herein involves a federal question.

5.

Venue is proper under 28 USC § 1391 (a)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

6.

The amount in controversy exceeds $75,000.00.

OPERATIVE FACTS

7.

On March 16, 2000, Plaintiff executed a mortgage conveying a security interest in her home at 4506 Forest Road, Columbus, Georgia, 31907 to New South Federal Savings Bank which was subsequently assigned to Bank of America, N.A. (BANA).

8.

On the same date, Plaintiff executed a note in the amount of $44,130.00 with interest at 8.875% with the last payment due on April 1, 2030.

9.

This was a federally insured loan with FHA.

10.

In 2004 Jamie had to file a Chapter 13 bankruptcy.

11.

At the time of filing the Chapter 13, Jamie was behind on her payments with BANA.

12.

During the time Jamie was in Chapter 13, she paid through the Chapter 13 trustee all of her delinquent payments with BANA and kept her payments current with BANA.

13.

The last payment made to BANA by the Chapter 13 trustee was made on March 8, 2010 because Jamie had completed her Chapter 13 on February 8, 2010.

14.

Jamie was instructed by the Chapter 13 trustee to make the April 1, 2010 payment and future payments to BANA.

15.

On February 26, 2010, the Chapter 13 trustee sent a letter to BANA showing all disbursements made by her to BANA and requested that BANA compare it to their records as she was showing BANA that Jamie's loan with BANA was current and that Jamie was to make the April 1, 2010 payment. Attached as Exhibit 1.

16.

In April and May of 2010, Jamie made her mortgage payments to BANA.

17.

BANA would not accept the June and July of 2010 payments and returned to Jamie the April and May of 2010 payments.

18.

For some reason, BANA had not credited Jamie with a lot of the payments made to BANA by the Chapter 13 trustee.

19.

In June of 2010, BANA began writing Jamie that she was seriously delinquent on her loan and that foreclosure would be started shortly.

20.

Beginning on June 9, 2010, Jamie began a series of phone calls to BANA and to their foreclosure lawyers, McCalla Raymer, attempting to show that she was current on her loan and that all past due and current payments that she had not been given credit for had been made by the Chapter 13 trustee.

21.

On July 14, 2010, Jamie hired a lawyer, Charlie Gower.

22.

On July 14, 2010, Charlie Gower wrote a letter to BANA's foreclosure lawyers, McCalla Raymer, trying to show to them that Jamie was current on her loan.

23.

Charlie Gower also sent this letter to everyone he could think of at BANA. See Exhibit 2 attached.

24.

On August 3, 2010, the day of the scheduled foreclosure sale, Jamie learned that BANA had called off the foreclosure.

25.

On August 11, 2010, McCalla Raymer wrote Charlie Gower that BANA had straightened out the account and that Jamie was current through April 1, 2010.

26.

In this letter, McCalla Raymer instructed Charlie Gower to contact Mr. Paul webb at BANA to make arrangements to bring the loan current for the payments due from April through August of 2010. Attached as Exhibit 3.

27.

Because McCalla Raymer instructed Charlie Gower and Jamie to contact Mr. Paul Webb at BANA, both Jamie and Charlie Gower assumed that he was the person they should contact with any problems on her account.

28.

On the same day, August 11, 2010, Jamie received a letter from BANA entitled NOTICE OF INTENT TO ACCELERATE showing that Jamie was seriously delinquent on her loan and owed late charges and other fees. Attached as Exhibit 4.

29.

On August 16, 2010, Charlie Gower wrote to Mr. Paul Webb. Attached as Exhibit 5.

30.

No response was ever received to this letter.

31.

On August 31, 2010, Jamie wrote to Mr. Paul Webb of BANA showing that the two letters both dated August 11, 2010 were very much contradicting each other and asking questions concerning her account. Attached as Exhibit 6.

32.

No response was ever received to this letter, nor were these questions ever answered in any way.

33.

In December of 2011, Jamie started receiving letters from McCalla Raymer again showing that they were going to foreclose on Jamie's home on January 3, 2012.

34.

Jamie had been saving up the money to bring her loan current as soon as she was told what amount it would be without fees and expenses charged by BANA.

35.

On December 1, 2011, Jamie wrote to Mr. Paul Webb trying again to get answers to her questions and trying to find out exactly how much she owed to bring her loan current without having to pay fees and expenses to BANA. Attached as Exhibit 7.

36.

Jamie never received a response to this letter from anyone.

37.

On January 3, 2012, Jamie had the funds on hand to bring her loan current, but did not have the funds to pay off the entire amount of this loan.

38.

On January 3, 2012, Jamie's home was sold at the Courthouse steps to Kennon Realty Services.

39.

Jamie is sure that BANA collected fees and expenses from the proceeds of the foreclosure sale.

40.

On January 5, 2012, Jamie received a letter from Kennon Realty Services demanding that she get out of her home by January 20, 2012. Attached as Exhibit 8.

41.

On January 27, 2012, Jamie's husband, Victor, was served by the Marshall's office with a dispossessory warrant. Attached as Exhibit 9.

42.

On February 9, 2012, Jamie received a letter from Kennon Realty Services where the Marshall's office had set February 23, 2012 at 1:00pm to throw her out of her house. Attached as Exhibit 10.

43.

Charlie Gower contacted Kennon Realty Services and reached an agreement to allow Jamie and her family to stay in their home until March 3, 2012 provided they pay rent retroactive to the day of the foreclosure, January 3, 2012. Attached as Exhibit 11 is Charlie Gower's letter to Kennon Realty Services confirming this.

44.

On February 17, 2012, Jamie wrote to BANA again asking for answers to the questions posed in her letter of August 31, 2010 and December 1, 2011. Attached as Exhibit 12.

45.

Jamie also demanded that BANA return to her all fees and expenses which it has collected from her since June of 2010, including fees and expenses collected from the foreclosure proceeds.

## COUNT ONE

## RESPA VIOLATIONS

46.

Jamie's letters to BANA's Mr. Paul Webb dated August 31, 2010 (Exhibit 6) and December 1, 2011 (Exhibit 7) are qualified written requests to which BANA never responded.

47.

Jamie's letter of February 17, 2012 to BANA and Mr. Paul Webb (Exhibit 12) is a qualified written request.

48.

The amount of fees and expenses collected by BANA is unknown because BANA refuses to respond to Jamie's letters.

49.

BANA has failed to comply with Section 2605 including 2605 (k) of RESPA, making BANA liable for all actual damages caused to Jamie; including, but not limited to, emotional damages.

## COUNT TWO

## CONVERSION

50.

Jamie Rourk shows that BANA has unlawfully collected fees and expenses from Jamie, including fees and expenses from the foreclosure proceeds.

51.

Jamie has demanded the return of these fees and expenses.

52.

The exact amount of the fees and expenses collected by BANA from Jamie will have to be determined through discovery because BANA has refused to answer Jamie's request for information.

53.

BANA has committed the tort of conversion.

## COUNT THREE

## BREACH OF CONTRACT

54.

BANA has breached the terms of its contracts with Jamie – note and security deed.

## COUNT FOUR

## WRONGFUL FORECLOSURE

55.

Jamie's loan was an FHA insured loan subject to applicable HUD regulations.

56.

One HUD regulation, 24 CFR § 203.604, requires that the mortgagee must have a face-to-face interview with Jamie concerning her mortgage, or make a reasonable effort

to arrange such a meeting, before three full monthly installments due on the loan are unpaid.

57.

The face-to-face meeting requirement under 24 CFR § 203.604 is mandatory if the mortgaged property is within 200 miles of the mortgagee, its servicer, or a branch office of either.

58.

BANA has a branch office within 200 miles located in Columbus, Georgia.

59.

24 CFR § 203.604 also requires that the mortgagee must make an actual physical trip to Jamie's home to discuss her mortgage.

60.

24 CFR § 203.604 requires at a minimum one letter being sent to the mortgagor attempting to arrange a face-to-face meeting. This letter must be sent to Jamie certified by the Postal Service as having been dispatched.

61.

BANA did not have a face-to-face interview with Jamie; nor did it make reasonable efforts to arrange such an interview; nor did it send the required certified mail letter; nor did it send someone to her home to arrange a face-to-face interview.

62.

Compliance with the above HUD regulations is a condition precedent to being able to foreclose as they are made terms of the contract between Jamie and BANA.

63.

BANA intentionally set out to harm Jamie knowing that it had no right to foreclose on her home, but did it anyway.

64.

Jamie has sustained monetary loss as a result of BANA's wrongful acts.

65.

As a result of the illegal foreclosure, Jamie has lost the equity she had in her home.

66.

Jamie has sustained both mental and physical injury as a result of BANA's wrongful acts.

67.

Jamie is suffering from depression, crying spells, headaches, and cannot sleep as a result of BANA's actions.

68.

BANA has committed the tort of wrongful foreclosure.

## COUNT FIVE

### ATTORNEYS' FEES AND EXPENSES

69.

BANA has acted in bad faith, has been stubbornly litigious, and has caused Jamie unnecessary trouble and expense, entitling her to recover attorneys' fees and expenses under O.C.G.A. § 13-6-11.

## COUNT SIX

## PUNITIVE DAMAGES

70.

BANA is liable for punitive damages for its willful, malicious, and reckless conduct and specific intent to cause harm to Jamie.

WHEREFORE Plaintiff prays that she recover the following:

(1) Actual damages;

(2) Emotional damages;

(3) General damages;

(4) Damages for loss of equity in home and expenses in moving;

(5) Expenses of litigation, including attorneys' fees;

(6) Punitive damages;

(7) Such other damages as are appropriate in this case;

(8) Trial by Jury.

This 21st day of February, 2012.

                                           CHARLES A. GOWER, P.C.

                                           */s/ Charles A. Gower*
                                           CHARLES A. GOWER
                                           Georgia Bar No. 303500
                                           TERESA T. ABELL
                                           Georgia Bar No. 000383
                                           MIRANDA J. BRASH
                                           Georgia Bar No. 475203

1425 Wynnton Road
P. O. Box 5509
Columbus, GA 31906
(706)324-5685