```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

JAMIE ROURK,                        *
         Plaintiff,                 *
vs.                                 *    CASE NO. 4:12-CV-42 (CDL)
BANK OF AMERICA NATIONAL            *
ASSOCIATION,
                                    *
         Defendant.
                                    *
```

O R D E R

Plaintiff Jamie Rourk ("Rourk") asserts claims against Defendant Bank of America ("the Bank") for wrongful foreclosure, conversion, breach of contract, violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, and "intentional negligent servicing of loan." The Bank seeks dismissal of all of these claims. For the reasons set forth below, the Bank's Motion to Dismiss (ECF No. 6) is granted in part and denied in part. The Court dismisses Rourk's RESPA claim under 12 U.S.C. § 2605(k) and her RESPA claim under 12 U.S.C. § 2605(e) based on Rourk's February 17, 2012 letter to the Bank. The Court declines to dismiss the remaining claims.

MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and

exhibits attached thereto.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

Rourk attached various documents, including correspondence between her and the Bank, to the Complaint.  Rourk also attached the security deed, which is central to her claims, to her Response to the Bank's motion to dismiss.  The Bank does not appear to challenge the authenticity of the documents and in fact relies on some of the documents in support of its Motion to Dismiss.  The Court may consider the documents in ruling on the

2

pending motion to dismiss. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379-80 (11th Cir. 2010) (recognizing that a district court may consider a document outside the pleadings in ruling on a motion to dismiss if the document is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged") (internal quotation marks omitted).

## FACTUAL ALLEGATIONS

Rourk makes the following allegations in her Complaint and First Amendment to the Complaint. Rourk obtained a home loan in March 2000. She executed a note in the amount of $44,130.00 and also executed a mortgage conveying a security interest in her home to New South Federal Savings Bank. The mortgage was later assigned to the Bank. The security deed states that the lender is authorized to accelerate the debt if the borrower "defaults by failing to pay in full any monthly payment . . . prior to or on the due date of the next monthly payment." Pl.'s Resp. to Def.'s Mot. to Dismiss Ex. A, Security Deed ¶ 9(a)(1), ECF No. 16-1 [hereinafter "Security Deed"]. If the lender accelerates the debt, the lender "may invoke the power of sale granted by" the borrower, and the lender is entitled to collect all expenses incurred in pursuing the power of sale, including reasonable attorneys' fees. *Id.* ¶ 18. The security deed further states that it "does not authorize acceleration or foreclosure if not

permitted by regulations of the Secretary [of Housing and Urban Development]."  *Id.* ¶ 9(d); *see also id.* ¶ 9(a) ("[The Bank] may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by [the security deed].").

In 2004, Rourk was behind on her mortgage payments to the Bank, and she filed a Chapter 13 bankruptcy.  During the bankruptcy, Rourk made her mortgage payments through the Chapter 13 trustee.  In February 2010, according to the Chapter 13 trustee's records, Rourk's mortgage had been kept current during the bankruptcy and the pre-petition arrears claim for the mortgage had been paid in full.  Compl. Ex. 1, Letter from T. Gathright to J. Rourk (Feb. 26, 2010), ECF No. 1-2.  The Chapter 13 trustee asked the Bank to confirm that its payment records also showed that Rourk's loan was current.  The Chapter 13 trustee informed Rourk and the Bank that the Chapter 13 trustee would make the March 2010 mortgage payment and that Rourk would be responsible for making the mortgage payments beginning in April 2010.  *Id.*

The Bank, however, had not credited Rourk with "a lot of the payments" made to the Bank by the Chapter 13 trustee.  Compl. ¶ 18.  In April and May of 2010, Rourk sent her mortgage payments to the Bank, but the Bank returned them.  The Bank also would not accept payments Rourk sent in June and July of 2010.  In June

4

2010, the Bank sent a letter to Rourk stating that she was seriously delinquent on her loan and that foreclosure proceedings were imminent. Rourk attempted to handle the issue by telephoning the Bank and its foreclosure attorneys, and then she hired an attorney to help her. *Id.* ¶¶ 19-21.

Rourk's attorney, Charlie Gower ("Gower"), wrote a letter to the Bank's foreclosure attorneys, explaining that Rourk was current on her loan and attaching the Chapter 13 trustee's letter regarding mortgage disbursements made on behalf of Rourk. Compl. Ex. 2, Letter from C. Gower to McCalla Raymer, LLC (July 14, 2010), ECF No. 1-3. Gower copied the following individuals and entities on the letter: the Bank (at an address in Westlake Village, California), Shavita (via fax), Lisa Moralis (via fax), Dennis McFearson (via fax), and James Carpenter of McCalla Raymer (via fax). *Id.* at 2. A foreclosure sale set for August 3, 2010 did not take place.

On August 11, 2010, one of the Bank's foreclosure attorneys sent Gower a letter stating that Rourk's loan would "be reflected as current through April 1, 2010." Compl. Ex. 3, Letter from M. Allgood to C. Gower 1 (Aug. 11, 2010), ECF No. 1-4. The letter instructed Gower to contact Paul Webb at the Bank to bring Rourk's loan "current for payments due April through August 2010." *Id.* On the same day, the Bank sent Rourk a letter entitled "Notice of Intent to Accelerate," which stated that

5

Rourk's loan was "in serious default." Compl. Ex. 4, Letter from the Bank to J. Rourk (Aug. 11, 2010), ECF No. 1-5. The letter stated that Rourk owed $989.73 to bring her loan out of default. *Id.*

Gower wrote a letter to Paul Webb on August 16, 2010, but he never received a response. On August 31, 2010, Rourk wrote a letter to Paul Webb, summarizing the two letters she had received from the Bank and its attorneys in August. Rourk explained that the letter from the Bank's foreclosure attorneys stated that her loan was current through April 1, 2010 and that she owed payments to bring the loan current; Rourk asked what amount she owed to bring the loan current. Compl. Ex. 6, Letter from J. Rourk to P. Webb (Aug. 31, 2010), ECF No. 1-7. Rourk also explained that the "Notice of Intent to Accelerate" stated that Rourk owed $989.73, and she asked for an explanation of why she owed this amount. *Id.* at 1. Rourk also asked for an explanation of the payment history she received from the Bank's foreclosure attorneys, and she asked for a complete payment history. *Id.* Rourk never received a response to her letter. Rourk alleges that she set aside money so that she would be able to bring her loan current as soon as the Bank told her how much she owed. Compl. ¶ 34. There is no allegation in the Complaint that Rourk tendered any payments to the Bank after July 2010.

In December 2011, Rourk received letters from the Bank's foreclosure attorneys stating that the Bank was planning to foreclose on Rourk's home on January 3, 2012. On December 1, 2011, Rourk wrote another letter to Paul Webb and asked him to tell her "exactly how much" she owed to bring the loan current and how the Bank calculated that amount. Compl. Ex. 7, Letter from J. Rourk to P. Webb 2 (Dec. 1, 2011), ECF No. 1-8. Rourk alleges that she had funds on hand to bring her loan current but did not have funds to pay off the entire loan. Rourk never received a response to the December 1, 2011 letter.

On January 3, 2012, the foreclosure sale proceeded. On February 17, 2012, Rourk wrote another letter to the Bank. Rourk asked for an explanation of what fees and expenses were collected out of the foreclosure sale proceeds, and she demanded that the Bank return all fees and expenses it had collected from her since June 2010. Compl. Ex. 12, Letter from J. Rourk to the Bank (Feb. 17, 2012), ECF No. 1-13.

Rourk asserts the following substantive claims against the Bank:

(1) Claims under RESPA based on the letters Rourk sent to the Bank on August 31, 2010, December 1, 2011 and February 17, 2012. Compl. ¶¶ 46-49.

(2) A conversion claim based on allegedly unlawful collection of fees and expenses from Rourk, including fees and expenses from the foreclosure proceedings. *Id.* ¶¶ 50-53.

(3) A breach of contract claim based on the Bank's alleged breach of "the terms of its contracts with [Rourk] – note and security deed." *Id.* ¶ 54.

(4) A wrongful foreclosure claim based on the Bank's failure to arrange (or attempt to arrange) a face-to-face meeting regarding her mortgage. *Id.* ¶¶ 55-68.

(5) An "intentional negligent servicing of loan" claim based on the Bank's alleged disregard of certain regulations, including loss mitigation actions. *Id.* ¶¶ 69-74.

## DISCUSSION

The Bank contends that all of Rourk's claims must be dismissed for failure to state a claim. The Court addresses each claim in turn.

**I. RESPA Claims**

Rourk alleges that the Bank failed to comply with RESPA's provisions that require a loan servicer to respond to borrower inquiries. Rourk asserts her RESPA claims under "Section 2605 including 2605(k) of RESPA." Compl. ¶ 49. She also alleges that the Bank failed to respond to her qualified written requests. *Id.* ¶¶ 46-48. Based on these allegations, the Court concludes that Rourk is attempting to bring RESPA claims under § 2605(e) and § 2605(k).

A. <u>RESPA Claim Under § 2605(e)</u>

Under § 2605(e) of RESPA, if a borrower sends her mortgage servicer a "qualified written request" seeking account corrections or account information, the servicer must acknowledge receipt of the request and respond to the request by correcting

8

the account or conducting an investigation and providing the borrower with a written explanation of why the servicer believes the account is correct. 12 U.S.C. § 2605(e)(1)-(2). If a servicer fails to comply with RESPA, the borrower may recover "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A).

The Court assumes for purposes of the pending motion that Rourk's three letters were qualified written requests within the meaning of RESPA, and the Court accepts as true Rourk's allegation that the Bank took no action in response to the first two letters.[1] The Bank contends, however, that Rourk's Complaint does not state a claim under RESPA because (1) Rourk did not send her letters to the Bank's exclusive address for receiving such correspondence, and (2) Rourk failed to allege that the Bank's failure to respond proximately caused her damages.

First, the Bank contends that Rourk's letters were not qualified written requests within the meaning of RESPA because Rourk did not send them to the Bank's exclusive address for receiving such correspondence. Pursuant to 24 C.F.R. §

---

[1] Rourk does not allege in her Complaint or Amended Complaint that the Bank did not properly respond to the third letter, presumably because she filed her Complaint and her Amended Complaint within a week of sending the February 17, 2012 letter and the deadline for a response had not yet elapsed. Given that a loan servicer's failure to respond to a qualified written request is an essential element of a RESPA § 2605(e) claim, the Court concludes that Rourk has not sufficiently alleged a RESPA § 2605(e) claim based on the February 17, 2012 letter, and that claim is dismissed.

9

3500.21(e)(1), a mortgage servicer "may establish a separate and exclusive office and address for the receipt and handling of qualified written requests," and the servicer must notify the borrower of the exclusive address "[b]y notice either included in the Notice of Transfer or separately delivered by first-class mail." 24 C.F.R. § 3500.21(e)(1). The Bank asserts that it established an exclusive address for qualified written requests and that Rourk's August 2010 and December 2011 letters were not sent to that address. The Bank merely asserts that it has an exclusive address for qualified written requests, without pointing to any allegations in the Complaint or evidence in the attachments to the pleadings that it had an exclusive address for qualified written requests and properly notified Rourk of such an address. Moreover, Rourk alleges that the Bank instructed her and her attorney to communicate with a specific representative of the Bank about her loan. For these reasons, the question whether the Bank had an exclusive address for qualified written requests cannot be decided at this stage in the litigation, and Rourk's alleged failure to send her letters to the exclusive address does not bar her RESPA § 2605(e) claims.

Turning to the Bank's causation argument, the Bank contends that Rourk failed to allege that the Bank's failure to respond to her qualified written requests proximately caused her damages. In connection with her RESPA claims, Rourk seeks "actual damages

10

. . . including, but not limited to, emotional damages." Compl. ¶ 49; *see also* 12 U.S.C. § 2605(f)(1)(A) (stating that if a servicer fails to comply with RESPA, the borrower may recover "any actual damages to the borrower as a result of the failure"). Though the Bank contends that Rourk has not adequately detailed what "actual damages" were caused by the alleged RESPA violations, a plain reading of the Complaint reveals that Rourk contends that the foreclosure and all related damages would not have occurred if the Bank had responded to Rourk's qualified written requests. The remaining question, therefore, is whether Rourk adequately alleged a causal link between these damages and the Bank's RESPA violations. The Court finds that she has.

In her August 31, 2010 letter, Rourk asked the Bank for an explanation of why she owed certain fees listed on the "Notice of Intent to Accelerate," she asked for an explanation of the payment history she received from the Bank's foreclosure attorneys (including "Unapplied Total" and "Misc. Posts") and she asked for a complete payment history. Most importantly, Rourk asked exactly how much she owed to bring the loan current—which is precisely what the Bank's foreclosure attorney had told her to do. Rourk's December 1, 2011 letter was in response to the Bank's initiation of foreclosure proceedings. In the letter, Rourk asked for an explanation of exactly how much she owed to bring the loan current so that the foreclosure proceedings would

11

stop.  Rourk alleges that she had sufficient funds set aside to bring the loan current but that she needed an explanation from the Bank regarding the exact amount she owed.  Rourk also alleges that the Bank did not respond to the two letters.

The Bank contends Rourk has failed to allege a causal connection between its failure to respond and Rourk's damages, including damages related to the foreclosure, because Rourk defaulted on her mortgage by failing to make a payment between August 2010 and December 2011.  Rourk contends that any default was caused by the Bank's failure to respond to her letters.  The Bank asserts that it was Rourk's default—not the Bank's failure to respond to the letters—that caused any damages Rourk suffered.

The Complaint contains no allegations that Rourk attempted to make a mortgage payment between August 2010 and December 2011.  Therefore, under the terms of the security deed that Rourk agreed to, Rourk was in default status before December 2011.  Rourk alleges, however, that the Bank never responded to her letters to tell her how much she owed to bring her loan current—even though the Bank's foreclosure attorney told her to contact the Bank for that information.  Given the conflicting information Rourk received from the Bank and its agents in the two August 11, 2010 letters, the Court cannot conclude as a matter of law at this stage in the litigation that Rourk's conduct negates any causation between the Bank's failure to respond and the

12

foreclosure and damages. Rourk alleges that if the Bank had responded to her letters and told her "exactly" how much she owed to bring the loan current, Rourk would have paid that amount. The Court therefore declines to conclude that Rourk has failed to allege a causal connection between her damages and the Bank's failure to respond to her qualified written requests. Accordingly, the Bank's motion to dismiss Rourk's § 2605(e) RESPA claim is denied.

B.  RESPA Claim Under § 2605(k)

As this Court recently recognized, RESPA § 2605(k) is not yet in effect. *See* Order on Mot. to Dismiss 9-11, *Bates v. JPMorganChase*, No. 4:12-CV-43 (CDL), Aug. 27, 2012, ECF No. 25. Accordingly, Rourk cannot base her RESPA claims on that statute, and her RESPA claim under § 2605(k) is therefore dismissed.

**II. Conversion Claim**

Rourk's conversion claim is based on the Bank's alleged unlawful collection of fees and expenses from Rourk, including fees and expenses from the foreclosure proceedings. "Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation. . . . Any distinct act of dominion wrongfully asserted over another's property in denial of his

13

right, or inconsistent with it, is a conversion." *Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 276 Ga. 817, 819, 583 S.E.2d 6, 7 (2003) (alteration in original) (internal quotation marks omitted). A conversion action can be based on the conversion of specific, identifiable funds. *E.g., id.* at 820-21, 583 S.E.2d at 8-9. Rourk contends that the Bank converted "fees and expenses collected from the foreclosure proceeds," Compl. ¶ 45, which she is "sure" the Bank collected, *id.* ¶ 39.

Under the security deed, if the Bank invokes the power of sale granted by Rourk, then the Bank is "entitled to collect all expenses incurred in pursuing the remedies [permitted by the security deed and applicable law], including, but not limited to, reasonable attorneys' fees and costs of title evidence." Security Deed ¶ 18. Rourk agreed that the proceeds of any foreclosure sale would be applied "in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by [the security deed]; and (c) any excess to the person or persons legally entitled to it." *Id.* As discussed above, however, Rourk adequately alleges that her default status was due to the Bank's failure to accept and apply her payments and the Bank's failure to respond to her qualified written requests. If Rourk's default status was due to the Bank's errors as Rourk alleges, then the Bank improperly invoked the power of sale and was not entitled to

14

collect any foreclosure fees and expenses. Therefore, the Court declines to dismiss Rourk's conversion claim.

### III. Breach of Contract Claim

Rourk asserts a breach of contract claim against the Bank. The Bank argues that Rourk has not adequately pled a breach of contract claim because, although she alleges that the Bank breached the note and security deed, Rourk has not identified specific provisions in the note and security deed that the Bank breached.[2] The Bank also contends that Rourk has not adequately alleged a causal connection between the Bank's alleged breach and the damages she suffered due to the foreclosure of her home.

Rourk alleges that she executed a note and security deed that were assigned to the Bank. Rourk alleges that the Bank failed to apply payments to her account even though the payments were sufficient to bring her account current. Compl. ¶¶ 15-17. Rourk further alleges that the Bank did not credit Rourk with "a lot of the payments made to [the Bank] by the Chapter 13 trustee." *Id.* ¶ 18. Rourk alleges that the Bank collected fees and expenses from her that she did not owe. *E.g., id.* ¶ 39. Rourk also alleges that certain HUD regulations were made terms

---

[2] In her response to the Bank's Motion to Dismiss, Rourk pointed to specific provisions in the security deed and provided a detailed explanation of her theory that the Bank breached those provisions. Pl.'s Resp. to Def.'s Mot. to Dismiss 11-14, ECF No. 16. Rourk did not, however, seek to amend her Complaint to add these additional allegations, and the Court is limited to the allegations in the Complaint itself.

15

of her contract with the Bank and that the Bank did not follow them. *Id.* ¶¶ 56-62. Finally, Rourk alleges that the Bank invoked the power of sale even though it was not authorized to do so. *E.g., id.* ¶ 63.

While these allegations are not as detailed as they could be, it is obvious that Rourk is alleging that the Bank breached provisions of the note and security deed regarding (1) application of payments, (2) permissible fees and charges, (3) duties under certain HUD regulations that were allegedly incorporated into the note and security deed, and (4) invocation of the power of sale.[3] The Court therefore concludes that the

---

[3] For purposes of its opposition to Rourk's "intentional negligent servicing" claim, the Bank contends that no HUD regulations were incorporated into the security deed. It is not clear whether the Bank also contends that Rourk cannot base a breach of contract claim on certain provisions referencing the HUD regulations. The security deed provides, in pertinent part:

> Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if . . . Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment[.]
>
> In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

Security Deed ¶¶ 9(a), 9(d).

The Bank appears to concede that these contractual provisions "requir[e] consistency with applicable laws or regulations." Reply Mem. in Supp. of Def.'s Mot. to Dismiss 9, ECF No. 17. The Bank does not clearly explain its position that the security deed does not bind the Bank to adhere to certain HUD regulations, and the Court declines

Complaint contains "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The next question is whether Rourk sufficiently alleged a causal connection between the Bank's alleged breach and the damages she suffered due to the foreclosure of her home. Under Georgia law, the elements for a breach of contract claim are "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010) (internal quotation marks omitted). "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." O.C.G.A. § 13-6-2. Here, Rourk contends that the Bank's alleged breaches of contract caused her loan to be placed in default status. As discussed above, Rourk adequately alleges that her default status was due to the Bank's failure to accept and apply her payments and the Bank's failure to respond to her qualified written requests. The Court therefore declines to conclude that Rourk has failed to allege a causal connection between her damages and

---

at this time to conclude that the security deed did not require compliance with the HUD regulations.

the Bank's alleged breaches of contract. The Bank's motion to dismiss Rourk's breach of contract claims is denied.

## IV. Wrongful Foreclosure Claim

Rourk also alleges that the Bank wrongfully foreclosed on her home.[4] "Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004). Rourk asserts that the Bank breached its legal duty under O.C.G.A. § 23-2-114 to exercise fairly the power of sale because the Bank did not communicate with her about how to bring her loan current, did not attempt a face-to-face meeting in accordance with 24 C.F.R. § 203.604 and did not comply with certain HUD regulations on loss mitigation. The Bank asserts that Rourk failed to allege a causal connection between these alleged failures and the foreclosure. Again, Rourk adequately alleges that her default status was due to the Bank's failure to accept and apply her payments and the Bank's failure to respond to her qualified written requests. For these reasons, the Court declines to

---

[4] Rourk further contends that the Bank committed "intentional negligent servicing" of her loan. The "intentional negligent servicing" claim is largely indistinguishable from Rourk's wrongful foreclosure claim, and the Court considers the "intentional negligent servicing" allegations to be part of the wrongful foreclosure claim instead of a separate, independent claim.

18

conclude that Rourk has failed to allege a causal connection between her damages and the Bank's alleged breaches of its duty to exercise fairly the power of sale. Accordingly, the Bank's motion to dismiss Rourk's wrongful foreclosure claim is denied.

CONCLUSION

For the reasons set forth above, the Bank's Motion to Dismiss (ECF No. 6) is granted as to Rourk's RESPA claim under 12 U.S.C. § 2605(k) and her RESPA claim under 12 U.S.C. § 2605(e) based on the February 17, 2012 letter. The following claims remain pending: (1) § 2605(e) RESPA claim based on the August 2010 and December 2011 letters, (2) conversion claim, (3) breach of contract claim, and (4) wrongful foreclosure claim.

IT IS SO ORDERED, this 28th day of August, 2012.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE
