IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JAMIE ROURK,                         *

     Plaintiff,                     *

vs.                                  *        CASE NO. 4:12-CV-42 (CDL)

BANK OF AMERICA NATIONAL             *
ASSOCIATION,
                                     *
     Defendant.

                                 *

<u>O R D E R</u>

After reading the parties' summary judgment briefs, it is hard to imagine a more fact intensive dispute.  But one fact that is not disputed is dispositive of all of Plaintiff Jamie Rourk's ["Plaintiff"] claims.  Although Defendant Bank of America National Association ["Defendant"] may have made mistakes servicing Plaintiff's mortgage account and may not have effectively communicated with Plaintiff, neither the mistakes nor the failure of communication caused Plaintiff's account to go into default.  Plaintiff's failure to make any payment on her mortgage for almost two years caused her default and the corresponding foreclosure on her home.  This undisputed fact is fatal for all of Plaintiff's claims.

To simplify this Order, the Court will assume for purposes of summary judgment that when Plaintiff emerged from bankruptcy in April 2010, Defendant erroneously deemed Plaintiff's account

to be in default and rejected the mortgage payments Plaintiff sent in April, May, June, and July because she did not tender certified funds. The Court further assumes that Plaintiff sent a letter to Defendant in August 2010 that would qualify as a qualified written request for clarifying account information under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, and that Defendant did not respond to that letter as required by RESPA.

Prior to Plaintiff's August 2010 letter, Plaintiff contacted Defendant in June and July via telephone and fax to dispute Defendant's contention that she was in default and to request that Defendant fix her account. In response to those inquiries, Defendant credited Plaintiff's account to make it current as of the date she emerged from bankruptcy and informed her that if she made her mortgage payments for April 2010 through August 2010, which Plaintiff admitted she owed, her account would be current.[1] Defendant, however, sent Plaintiff conflicting information about the exact amount she needed to pay

---

[1] During Plaintiff's bankruptcy, a deficiency developed in her escrow account, and that is why Defendant contends that Plaintiff's account was in default when she emerged from bankruptcy. In August 2010, when Defendant agreed to consider Plaintiff's account as current through April 2010, Defendant did not forgive the escrow deficiency and in fact sought to recover the deficiency by performing an escrow account analysis and increasing the amount of Plaintiff's escrow payment going forward. Plaintiff's account would have remained current had she made up the four mortgage payments Defendant had previously rejected and paid her regular mortgage payments along with the amounts necessary to make up the escrow deficiency plus future escrow expenses.

to bring her loan current.  In her August 2010 letter, Plaintiff acknowledged that Defendant had brought her loan current through April 2010 and asked Defendant to clarify how much she owed to bring her account current through August 2010.  Believing that she did not need to make any payment on her loan until Defendant gave her an exact payment amount, Plaintiff paid nothing on her loan for nearly two years.  Plaintiff now complains because Defendant foreclosed on her house in January 2012.

Plaintiff brought claims against Defendant for wrongful foreclosure, conversion, breach of contract, and violations of RESPA.  Plaintiff's central argument in support of these claims is that she was excused from making any payments until Defendant responded to her August 2010 letter.  The Court disagrees.  For the reasons set forth below, all of Plaintiff's claims against Defendant fail.  Accordingly, the Court denies Plaintiff's Motion for Partial Summary Judgment (ECF No. 34) and grants Defendant's Motion for Summary Judgment (ECF No. 41).

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party

opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

DISCUSSION

**I.   Plaintiff's Default and Its Cause**

Plaintiff does not dispute that she did not tender a single payment to Defendant after July 2010, even after Defendant in August 2010 agreed that her account was current through April 2010 and instructed her to make up the four payments Defendant previously rejected. It is undeniable that such a failure amounts to a default under Plaintiff's Security Deed. Plaintiff maintains that she was somehow excused from the consequences of that default because Defendant failed to respond to her August 2010 letter inquiring exactly how much she owed to bring her account current and how Defendant calculated that amount. Resolution of whether this contention by Plaintiff has any legal validity ultimately determines whether any of Plaintiff's claims are sustainable.

Plaintiff did not cite a single Eleventh Circuit or Georgia appellate decision that stands for the proposition that a borrower who undisputedly owes principal and interest payments

on a mortgage for a house in which she lives may decline to make a payment for twenty-one months and then blame that failure on the bank because the bank had previously mishandled her account. And it is clear that any such argument would be unavailing. Under Georgia law, a borrower may not withhold payments under these circumstances. In *Mitchell v. Interbay Funding, LLC*, for example, the loan servicer notified the borrowers that they needed flood insurance, and the borrowers disputed that assessment. 279 Ga. App. 323, 324, 630 S.E.2d 909, 910 (2006). The loan servicer obtained forced place flood insurance and increased the borrowers' monthly payment to account for the premium. The borrowers did not increase their payments, and when the loan servicer continued to demand additional money for flood insurance, the borrowers stopped making payments altogether. The Georgia Court of Appeals concluded that the borrowers were in default on the loan due to their failure to pay: "even if a bona fide controversy existed as to liability for" flood insurance premiums, the borrowers "were obligated to pay the monthly sum they admittedly owed under the promissory note." *Id.* at 325, 630 S.E.2d at 911.

Plaintiff did cite a Seventh Circuit case in which the court found that there was a fact question as to whether the plaintiffs' failure to remit a *timely* payment was excused even though it was a breach of contract because of "the lenders'

earlier breaches and errors and the resulting confusion surrounding their account." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 692 (7th Cir. 2011). *Catalan* is obviously distinguishable from this case. In that case, the borrowers' mortgage was transferred, but the borrowers were not notified of the transfer, and they continued sending their mortgage payments to the first loan servicer. *Id.* at 681-82. The borrowers delayed *one* mortgage payment because they were confused about which loan servicer should receive it, they had sent funds to the first loan servicer that were not applied to their account, and they received "mixed messages" from the second loan servicer regarding how to bring their account current. *Id.* at 691-92. Significantly, after the borrowers delayed that one payment, the second loan servicer told them that they could bring their account current by paying a specific amount, and the borrowers sent the loan servicer a check for that amount plus more than $1,500. *Id.* at 691. Therefore, "[a] reasonable jury could conclude that the [borrowers] were doing their best to hold up their end of the bargain—after all, they were not squandering their uncashed mortgage payments, and in November they were able to send [the second loan servicer] more than it asked for." *Id.* at 691-92. In contrast, Plaintiff here did not tender a single cent to Defendant after Defendant corrected Plaintiff's account in August 2010.

In summary, as of mid-August 2010, Plaintiff knew that her account was current through April 2010. She also knew that she owed Defendant four months' worth of mortgage payments for April through July, plus her August payment. While Plaintiff may have disputed the exact amounts of those payments, she knew at a minimum that she owed the payment reflected in the Note as principal and interest. Yet she paid nothing for the next sixteen months. Plaintiff was not legally justified in withholding mortgage payments while she awaited clarity from Defendant. She offered no acceptable reason for failing to tender any payments. Therefore, it is undisputed that Plaintiff's default was caused by her own failure to tender any payments in or after August 2010. *Cf. Mitchell*, 279 Ga. App. at 324-25, 630 S.E.2d at 911 (finding that trial court properly granted loan servicer's summary judgment on borrowers' wrongful foreclosure claim because the borrowers completely stopped making payments). Given this finding, the question is whether Plaintiff nevertheless may prevail on any of her claims.

## II. **Plaintiff's Claims**

### A. <u>RESPA Claim</u>

Plaintiff contends that Defendant failed to comply with RESPA's provisions that require a mortgage servicer to respond to borrower inquiries, and she argues that the failure caused her default and the subsequent foreclosure. Under RESPA

§ 2605(e), if a borrower sends her mortgage servicer a "qualified written request" seeking account corrections or account information, the servicer must acknowledge receipt of the request and respond to the request by correcting the account or providing the borrower with a written explanation of why the servicer believes the account is correct. 12 U.S.C. § 2605(e)(1)-(2). Plaintiff bases her RESPA claim on the August 2010 letter and on a letter she sent Defendant in December 2011 after Defendant notified her that it was initiating foreclosure proceedings.

Assuming that Plaintiff's letters to Defendant are qualified written requests within the meaning of RESPA and assuming that Defendant violated RESPA by not adequately responding, Plaintiff still fails to point to any evidence that she was damaged because of Defendant's alleged violations. Plaintiff contends that Defendant's failure to respond to her letters caused her to be in default on her mortgage and that Defendant is thus liable for damages related to the foreclosure. As previously explained, Plaintiff's own conduct led to her default and the foreclosure. In response to Plaintiff's fax and telephone inquiries in June and July of 2010, Defendant did exactly what she requested: it corrected her account so that her account would be current as long as she made up the four payments she acknowledged she owed. The foreclosure was caused

by Plaintiff's failure to tender a single payment after Defendant corrected her account in August 2010, not by Defendant's failure to respond to her letters. Because Plaintiff has failed to point to sufficient evidence of a causal connection between the Defendant's failure to answer her letters and the damages she seeks under RESPA, Defendant is entitled to summary judgment on Plaintiff's RESPA claims.

B.   Breach of Contract Claim

Plaintiff asserts that Defendant breached the Note and Security Deed in several ways and that the Defendant's breaches caused her default and the subsequent foreclosure. First, Plaintiff contends that Defendant misapplied her payments and charged her impermissible fees. These contentions are based on Plaintiff's speculative theory that an escrow deficiency developed in Plaintiff's account because Defendant misapplied Plaintiff's payments. Plaintiff pointed to no evidence that Defendant applied any of Plaintiff's payments to anything other than principal, interest, and escrow items. Therefore, Plaintiff has not presented sufficient evidence of a breach of contract based on misapplication of her payments.

Plaintiff also contends that Defendant breached its contract with her by rejecting her April through July 2010 payments because she did not tender certified funds. Again, the Court assumes for purposes of summary judgment that Plaintiff

was not in default as of April 2010, so Defendant was wrong to reject her payments and require her to send certified funds at that time.  Plaintiff, however, pointed to no evidence that the Defendant's failure to accept her payments before August 2010 caused the foreclosure, which occurred because Plaintiff failed to tender a single payment in or after August 2010.  Again, the evidence shows that after Plaintiff complained about Defendant's mishandling of her account, Defendant corrected her account and instructed her to bring the account current by making the four payments she undisputedly owed.  Plaintiff has not articulated an acceptable reason for failing to tender those payments, and the Court cannot think of one.  The evidence is insufficient to create a genuine factual dispute as to whether Defendant's previous failure to accept Plaintiff's payments caused her default and the subsequent foreclosure.  It clearly did not.

Finally, Plaintiff contends that certain regulations promulgated by the Department of Housing and Urban Development ("HUD") were incorporated into the Note and Security Deed and that Defendant was not permitted to accelerate the debt until Defendant complied with those regulations.  Specifically, Plaintiff contends that Defendant was required to attempt to arrange a face-to-face meeting with her and was required to make a trip to see her at her house.  Plaintiff contends that Defendant breached the Note and Security Deed by initiating

10

foreclosure proceedings despite technical deficiencies in Defendant's attempts to schedule a face-to-face meeting with her. Plaintiff also asserts that these technical deficiencies caused her to default on the Note and Security Deed.

Under 24 C.F.R. § 203.604(b), "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." A face-to-face meeting is not required if "[a] reasonable effort to arrange a meeting is unsuccessful." 24 C.F.R. § 203.604(c)(5). "A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched." 24 C.F.R. § 203.604(d). "[A] reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property[.]" *Id.* The Court assumes without deciding that Plaintiff may assert claims based on Defendant's failure to comply with these HUD Regulations. Even with these assumptions, Plaintiff's claims still fail.

Plaintiff contends that Defendant's efforts did not comply with the HUD regulations because Defendant's agent sent the letter seeking to arrange a face-to-face meeting by Federal Express and not certified mail. While a letter sent via Federal

Express with delivery confirmation may not strictly comply with the certified mail requirement, it does substantially comply with the requirement that the letter be certified as having been dispatched.  Plaintiff also contends that Defendant's efforts did not comply with the HUD regulations because Plaintiff was already more than three payments behind as of September 2010. Defendant considered Plaintiff's account current as of August 2010, assuming she would make up the four payments she acknowledged she needed to make.  Therefore, the Court finds that Defendant's attempts to arrange a face-to-face meeting with Plaintiff were not untimely.

There is evidence that Defendant's agent (1) sent Plaintiff a letter dated September 14, 2011 via Federal Express notifying her that it would send a representative to her home to meet with her, (2) attempted to contact Plaintiff by telephone many times, and (3) sent a representative to her home on three separate occasions.  Therefore, the Court concludes that Defendant substantially complied with the requirement that it make a reasonable effort to arrange a face-to-face meeting with her.

Even if Defendant had not substantially complied with the requirement that it make a reasonable effort to arrange a face-to-face meeting with Plaintiff, it was Plaintiff's failure to tender a single payment for nearly two years that caused her default status and the foreclosure.  Therefore, even if

Plaintiff had demonstrated that Defendant failed to make a reasonable effort to arrange a face-to-face meeting with her, she has not established that such a failure caused her any damages.

C.   Wrongful Foreclosure Claim

To state a claim for wrongful foreclosure under Georgia law, Plaintiff must "establish a legal duty owed to [her] by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury [she] sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004)  Even if Plaintiff establishes a duty and breach of the duty, Plaintiff "still needs to show a causal connection between" the breach and the alleged injury. *Id.*, 601 S.E.2d at 845.  Where an injury is attributable to the borrower's own failure to pay, the borrower cannot recover for wrongful foreclosure. *Id.* at 372, 601 S.E.2d at 845; *see also Mitchell*, 279 Ga. App. at 325, 630 S.E.2d at 911 (finding that summary judgment was appropriate on borrower's wrongful foreclosure claim because borrower completely stopped making payments required by promissory note and security deed).

As discussed above, Defendant corrected Plaintiff's account so that her account would be current as long as she made up the four payments she acknowledged she owed.  Therefore, the default was not caused by Defendant's previous mishandling of

13

Plaintiff's account.   It also was not caused because Defendant
did not effectively tell Plaintiff exactly what she owed to
bring her account current.   As discussed above, as of August
2010, Plaintiff knew that her account would be reflected as
current as long as she made up the four mortgage payments she
admitted she owed.   Her default and the ensuing foreclosure were
caused by her failure to tender a single payment after Defendant
corrected her account in August 2010, not by any mistake by
Defendant.   Finally, Plaintiff relies upon Defendant's alleged
failure to comply with the HUD regulations requiring a
reasonable effort to arrange a face-to-face meeting prior to
foreclosure.   Again, the Court assumes without deciding that
Plaintiff may assert claims based on Defendant's failure to
comply with these HUD Regulations.   As discussed previously,
Defendant substantially complied with those requirements.   Even
if it did not, it was Plaintiff's failure to make a single
payment for nearly two years that caused her default status and
the foreclosure.   Therefore, even if Plaintiff could establish
that Defendant failed to make a reasonable effort to arrange a
face-to-face meeting with her, she has not presented any
evidence that such a failure caused her any damages.

    D.   Conversion Claim

    Plaintiff contends that Defendant committed conversion in
two different ways.   First, she argues that Defendant committed

conversion by misapplying portions of her payments to impermissible fees. According to Plaintiff, the only logical explanation for an escrow deficiency that developed in her account is that Defendant converted her payments by applying them to fees she did not owe. However, there is no evidence to support this speculative conclusion, and Plaintiff's conversion claim based on Defendant's alleged misapplication of her payments fails as a matter of law.

Second, Plaintiff argues that Defendant committed conversion by collecting foreclosure fees and expenses. Plaintiff contends that Defendant was not entitled to collect *any* foreclosure fees because the foreclosure was unjustified. As discussed above, however, Plaintiff defaulted on her loan by failing to make payments due under the Note and Security Deed. Accordingly, Defendant had a right to foreclose and was entitled to collect foreclosure fees and expenses.

In the alternative, Plaintiff argues that even if Defendant did have a right to foreclose and collect foreclosure fees and expenses totaling $5,137.39 ($3,898.02 in fees and $1,239.37 in attorneys' fees), Defendant did not have a right to retain $1,280.56 for the escrow deficiency or $2,271.94 in "excess funds." Plaintiff has failed to point to any credible evidence that she did not have a legitimate escrow deficiency, and in fact the evidence supports the conclusion that she did have a

15

legitimate deficiency because Defendant paid Plaintiff's mortgage interest premiums, homeowner's insurance premiums, and property taxes during her bankruptcy when Plaintiff's escrow balance was not sufficient to cover these amounts.[2]   Therefore, Defendant was entitled to recover the amounts it advanced Plaintiff to cover her escrow expenses.   In addition, Defendant was entitled to recover the interest due under the Note up until the time of the foreclosure sale, which amounted to more than $6,000.   Defendant received $47,050 from the foreclosure sale. That amount was not sufficient to cover the outstanding principal, interest, escrow deficiency, and foreclosure fees and expenses.   Thus, there were no excess funds from the foreclosure sale upon which Plaintiff can base a conversion claim. Defendant is entitled to summary judgment on that claim.

> ### E.   Wrongful Attempted Foreclosure

In her summary judgment motion and her response to Defendant's summary judgment motion, Plaintiff argues that

---

[2] Based on the Court's review of Plaintiff's loan transaction history, it is clear that Defendant applied Plaintiff's escrow payments only to legitimate escrow items.   The deficiency in her escrow account arose because Plaintiff's loan servicer reduced Plaintiff's escrow payment in 2002 in light of a substantial cushion Plaintiff had built up in the account.   *See* Kovacs Dep. Ex. 23, Complete Loan Transaction History, ECF No. 25-3 at 6-38.   But the reduced escrow payments did not equal the escrow expenses, and by September 2007, Plaintiff's cushion was depleted; a deficiency developed in her escrow account and continued to grow each month.   *Id.* Although a dispute exists as to whether the deficiency was addressed during Plaintiff's bankruptcy, no evidence exists that the deficiency arose because of unauthorized charges.

Defendant is liable for wrongful *attempted* foreclosure. That claim is based on Defendant's publication of foreclosure notices in anticipation of an August 2, 2010 foreclosure sale that was canceled. Defendant responds that this claim was never alleged in Plaintiff's original or amended Complaint. Plaintiff asserted the following claims in her Complaint: Count One – RESPA Violations, Count Two – Conversion, Count Three – Breach of Contract, Count Four – Wrongful Foreclosure. Compl. 8-11, ECF No. 1. Plaintiff amended her Complaint to add a count for "Intentional Negligent Servicing of Loan." Am. Compl. 1, ECF No. 3. The focus of Plaintiff's Complaint is the foreclosure that occurred in January 2012. Plaintiff makes detailed allegations in support of her "wrongful foreclosure" claim, asserting that Defendant's foreclosure in 2012 caused her mental and physical injuries. Compl. ¶¶ 55-68. In contrast, Plaintiff did not set out a separate count for wrongful attempted foreclosure or include allegations that make it clear she is asserting such a claim. Though Plaintiff's Complaint briefly references the canceled August 2010 foreclosure sale, the Complaint does not put Defendant on notice that Plaintiff is attempting to assert a wrongful attempted foreclosure claim. *See Palmer v. Albertson's LLC*, 418 F. App'x 885, 889 (11th Cir. 2011) (per curiam) (holding that district court did not err in declining to consider the plaintiff's hostile work environment

17

claim, which was raised for the first time in the plaintiff's summary judgment response, because the plaintiff did not articulate such a claim in his complaint). Therefore, the Court finds that a wrongful attempted foreclosure claim has not been asserted in this action.

### CONCLUSION

As discussed above, Plaintiff's Motion for Partial Summary Judgment (ECF No. 34) is denied, and Defendant's Motion for Summary Judgment (ECF No. 41) is granted.


IT IS SO ORDERED, this 11th day of October, 2013.


S/Clay D. Land

CLAY D. LAND
UNITED STATES DISTRICT JUDGE